IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ROBERT ACKERMAN,

    Plaintiff,

v.                                              No. 05-2255 B

DIRECTV, INC.,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Plaintiff, Robert Ackerman brought this action against the Defendant DIRECTV, Inc. ("DIRECTV") for malicious prosecution arising from a lawsuit DIRECTV filed against Ackerman in the United States District Court for the Western District of Tennessee on May 23, 2003.[1]  Before the Court is the motion of the Defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed.2d 2 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988).  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,

---

[1] See DIRECTV, Inc. v. Ackerman, No. 03-2385 (W.D. Tenn.) (filed May 23, 2003).

475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324, 106 S. Ct. at 2552.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed.2d 202 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.  In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

The following facts are undisputed unless noted.  DIRECTV provides television programming to customers through subscription and pay-per-view service. (Decl. James F. Whalen ("Whalen Decl.") ¶ 5.)[2]  In order to prevent unauthorized reception of its programming, DIRECTV encrypts, or electronically scrambles, its satellite transmissions. (Whalen Decl. ¶ 5.) Subscribers gain legal access to DIRECTV programming through use of a satellite dish, an Integrated

---

[2] Whalen is the Vice President of DIRECTV's Office of Signal Integrity, which is responsible for investigating reports of satellite piracy involving the DIRECTV satellite television system. (Whalen Decl. ¶ 1.)

2

Receiver/Decoder ("IRD") and an access card provided by DIRECTV. (Whalen Decl. ¶ 5.) Each access card contains an embedded microprocessor and uses smartcard technology to control which programming the IRD descrambles based on the programming purchased by the subscriber. (Whalen Decl. ¶ 6.) The card also captures and transmits the subscriber's pay-per-view information to DIRECTV via telephone modem in the IRD in what is known as a "callback." (Whalen Decl. ¶ 6.)

Hackers and pirates create, distribute and use devices and software that permit individuals to gain unlawful access to access to DIRECTV's encrypted transmissions and view programming that they have not subscribed to or paid for. (Whalen Decl. ¶ 8.) On January 21, 2001, known as "Black Sunday" in the pirate community, DIRECTV attempted to protect its signal by sending out an electronic countermeasure ("ECM") that disabled access cards illegally altered to permit receipt of its programming without authorization. (Whalen Decl. ¶¶ 12, 14; Decl. Michael Barr ("Barr Decl.") ¶ 11-12.) Thereafter, pirates specifically designed access devices to counteract the effects of the Black Sunday ECM. (Whalen Decl. ¶ 14.) Such devices generally had "BS," "SU" or both in their name. (Whalen Decl. ¶ 14.) If an illegally modified access card was disabled by an ECM, a pirate access device known as an "unlooper" could be used to restore functionality to the disabled card. (Whalen Decl. ¶ 22; Barr Decl. ¶ 13.) The unlooper enables a pirate to gain access to the card's memory so that he can restore functionality or install new software capable of circumventing DIRECTV's security measures. (Whalen Decl. ¶ 22; Barr Decl. ¶ 13.) The Plaintiff does not dispute that the purchase of an uplooper is an indication that the purchaser possesses an illegally modified DIRECTV access card that has been disabled by an ECM and intends to use the unlooper to restore its functionality. (Whalen Decl. ¶ 23.)

On May 25, 2001, DIRECTV executed writs of seizure at the mail shipping facility used by

3

several major distributors of pirate access devices. (Whalen Decl. ¶ 19.)  As part of the execution of the writs, DIRECTV obtained records indicating that the Plaintiff made the following purchases from Vector Technologies: (1) a "SU2 Upgrade Chip" on or about March 12, 2001; (2) a "Vector Super Unloopers with SU2 Code" on or about March 14, 2001; and (3) an additional "Vector Super Unlooper with SU2 Code" on or about April 27, 2001.[3]  (Whalen Decl. ¶ 20.)  The devices were purchased in Ackerman's name; shipped to his business address and billed to his home address. (Whalen Decl. ¶ 20.)  Plaintiff concedes that the purpose of such devices is to enable the unauthorized receipt of DIRECTV programming.  (Whalen Decl. ¶ 21; Pl.'s Resp. Facts ¶ 18.)

On or about July 26, 2000, Ackerman purchased DIRECTV satellite equipment, activated an account, and subscribed to the Defendant's "Total Choice Platinum" subscription service. (Whalen Decl.¶¶ 25, 28.)  Two months later, in September 2000, Ackerman contacted DIRECTV to suspend his service because he was moving.  (Whalen Decl. ¶ 28.)  At this time, his account was placed in "minisvs" whereby he was charged a $3.00 monthly fee to hold open his account and not discontinue the signal.  (Whalen Decl. ¶ 28.)  However, Plaintiff concedes that he did not move at that time and, in fact, continued to reside at the same address throughout the course of the underlying litigation.  (Whalen Decl. ¶ 28; Pl.'s Resp. Facts ¶ 21; Decl. Antonio L. Matthews ("Matthews Decl."), Ex. A no. 12(A).)  On or about March 23, 2001, during the time period in which he purchased the referenced pirate access devices from Vector Technologies, Ackerman cancelled his direct TV service.  (Whalen Decl. ¶ 29.)  Ten days after his signal was disconnected, he re-subscribed to a significantly reduced DIRECTV subscription package. (Pl.'s Resp. Facts ¶ 24.)  The

---

[3] The Defendant also maintains that the obtained records indicate that Ackerman purchased a"SU2 BS Boot Chip" on or about March 12, 2001. (Whalen Decl. ¶ 20.)  In response, Plaintiff disputes this purchase on grounds that it was not cited in the underlying lawsuit nor was evidence of it provided during discovery in that suit. (Pl.'s Resp. Def.'s Statement Undisp. Mat. Facts (Pl.'s Resp. Facts") ¶ 17.)

4

Defendant also contends that, during the period of Ackerman's subscription, DIRECTV records show that only one "callback" occurred even though such calls are scheduled to occur monthly.[4] (Whalen Decl. ¶ 25.)  Whalen opined in his declaration that subscription history, such as that exhibited by Ackerman, was consistent with pirate activity.  (Whalen Decl. ¶¶ 27-30.)

In December 2002, Ackerman received a letter from the End User Recovery Project, LLC, ("TEURP")[5] detailing his purchases from Vector Technologies and accusing him of stealing DIRECTV's encrypted satellite signals. (Decl. Robert Ackerman ("Ackerman Decl.") ¶ 2.) Thereafter, in February 2003, he was notified by TEURP that a lawsuit would be filed against him by DIRECTV. (Ackerman Decl. ¶ 3.)  During 2003, Ackerman engaged in communications with a TEURP representative and, in addition, with counsel for DIRECTV. (Ackerman Decl. ¶¶ 3, 6-11.) He alleges that he informed both that he purchased the cited equipment for an electrician, known to him as "California," in exchange for services he received.  (Ackerman Decl. ¶¶ 7-9.)  Plaintiff further asserted that he was not aware, at the time of purchase, that the devices were illegal or could be used for illegal purposes.  (Ackerman Decl. ¶ 9.)  Ackerman avers that, in early 2003, DIRECTV's counsel sent him an agreement which included a $3,500.00 demand. (Ackerman Decl. ¶ 10.)  Ackerman ignored the demand and did not communicate further with DIRECTV's counsel. (Ackerman Decl. ¶ 10.)  Following communications between Plaintiff and TEURP in April 2003, Ackerman received the following notification

> [a]t this time based upon the evidence provided in the file to me as an investigator with the End User Recovery Project, [DIRECTV] has decided not to pursue this matter against you in Federal District Court.

---

[4] Plaintiff disputes this fact on the basis that Whalen's assertion is unsubstantiated. (Pl.'s Resp. Facts ¶ 25.)

[5] Ackerman states in his Declaration that The End User Recovery Project, LLC is an "arm of DIRECTV, Inc." (Ackerman Decl. ¶ 11.)

> Please be advised that if evidence is developed or discovered which contradicts the evidence that you have provided or that illustrates other involvement in satellite signal theft of [DIRECTV's] television programming, [DIRECTV] reserves the right to commence litigation against you in the future.

(Pl.'s Resp. Ex. D; Ackerman Decl. ¶ 13.) Subsequently, however, DIRECTV filed an action against Ackerman pursuant to the Cable Communications Policy Act, 47 U.S.C. § 605; 18 U.S.C. §§ 2510, 2521; Tenn. Code Ann. § 39-14-104, § 7-59-104; § 739-13-601; and common law conversion on May 23, 2002. (Compl. ¶ 7; Pl.'s Mem. Resp. Def.'s Mot. Summ. J. ("Pl.'s Resp."), Ex. B; Compl. ¶ 7.) The action was ultimately dismissed by DIRECTV without prejudice on June 15, 2004. (Ackerman Decl. ¶ 17.)

Plaintiff filed the instant action on April 6, 2005 seeking to recover compensatory and punitive damages, prejudgment interest and attorney's fees for the Defendant's alleged malicious prosecution of the underlying lawsuit.[6] To prevail on a malicious prosecution claim under Tennessee law, a plaintiff must show that (1) a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause; (2) the prior lawsuit or judicial proceeding was brought against the plaintiff with malice; and (3) the prior lawsuit or judicial proceeding terminated in the plaintiff's favor. Parrish v. Marquis, 172 S.W.3d 526, 530 (Tenn. 2005). In the instant motion, DIRECTV first contends that it is entitled to summary judgment because Ackerman cannot prove that it lacked probable cause to bring the underlying litigation. Probable cause is the linchpin in a malicious prosecution action. Shelby R.R. Service, Inc. v. Champlin, No. 02A01-9204-CV-00120, 1992 WL 317508, *3 (Tenn. Ct. App. Nov. 5, 1992) (citing Carter v. Baker's Food Rite Store, 787 S.W.2d 4,

---

[6] Plaintiff, a Tennessee resident, brought this claim with federal jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). Because the parties agree to the application of Tennessee state law, the court will apply Tennessee law and will not conduct a choice of law analysis sua sponte. See Sneyd v. International Paper Co., Inc., 142 F. Supp. 2d 819, 823 (E.D. Mich. 2001) (citing GBJ Corp. v. Eastern Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998)).

6

6 (Tenn. Ct. App.1989)).

> [T]he law as to reasonable or probable cause is defined to be such a state of facts in the mind of the prosecutor as would lead a person of ordinary caution and prudence to believe, or entertain an honest or strong suspicion, that the person is guilty. It does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution.[7]

F.W. Woolworth Co. v. Connors, 222 S.W. 1053, 1054 (Tenn. 1920).

Here, DIRECTV asserts that, at the time it commenced litigation against Ackerman, it knew that Plaintiff (1) purchased three devices designed for the purpose of unlawfully accessing DIRECTV's satellite signal; (2) was in possession of all equipment necessary to gain access to DIRECTV's signal; (3) exhibited subscription activity that it considered to be consistent with piracy; and (4) offered as his sole excuse for the purchase and possession of pirate devices a person who he had not named or produced.  (Def.'s Mem. at 9.)  On the basis of this information, DIRECTV contends that it had probable cause to believe that Ackerman was illegally intercepting its satellite signal.

In response, Plaintiff makes much of the fact that DIRECTV, through TEURP, stated that it would not pursue action against him in the absence of the discovery of additional evidence contradicting his explanation or indicating some other involvement in satellite theft. (Pl.'s Resp. at 8.) The Defendant's assertion in April 2003 that it did not intend to pursue litigation against the Plaintiff at that time does not appear to have any binding effect on the Defendant precluding it from filing suit where it had reason to believe that it had a valid claim against Ackerman. As such, contrary to the Plaintiff's contention, the letter does not establish a basis for his malicious

---

[7] While the definition of probable cause in Connors clearly relates to actions for malicious prosecution of criminal suits, this same standard has been employed in consideration of actions involving malicious civil prosecution.  See e.g., Shelby R.R. Service, Inc., 1992 WL 317508 at *2 ("Properly defined, probable cause requires only the existence of such facts and circumstances sufficient to excite in a reasonable mind the belief that the accused is guilty of the crime charged.")

7

prosecution claim where there was probable cause for the underlying suit.

As to probable cause, Plaintiff does not dispute that he purchased at least three pirate access devices and further, that the commercial purpose of such devices is to enable the unauthorized receipt of DIRECTV programming. (Whalen Decl. ¶ 21; Pl.'s Resp. Facts ¶ 18.) In addition, he does not contest the Defendant's assertion that he obtained the equipment necessary to receive DIRECTV equipment during the period he subscribed to the service and remained in possession of that equipment following his purchase of the pirate access devices. Based on this information alone, a person of ordinary caution and prudence could entertain a strong suspicion that Ackerman was illegally intercepting DIRECTV's satellite signals. See e.g., DIRECTV v. Miller, No. 6:03-cv-1027-Orl-19KRS, 2003 U.S. Dist. LEXIS 24958, *9-10 (M.D. Fl. Nov. 20, 2003) (finding that "[b]ased on their life experience, a jury could reasonably assume that people only buy electronic equipment . . . when they plan to use such equipment. . . . With this assumption in mind, a reasonable jury could then reject Defendant's self-serving testimony that he never pirated satellite signals and conclude instead that he did what normal people do after they buy electronic equipment - they use it.") Because DIRECTV did not bring the underlying lawsuit in the absence of probable cause, the Defendant is entitled to summary judgment on the Plaintiff's claim for malicious prosecution.[8] Accordingly, the motion of the Defendant is GRANTED.

IT IS SO ORDERED this 25th day of July, 2006.

                              s/ J. DANIEL BREEN
                              UNITED STATES DISTRICT JUDGE

---

[8] Because Plaintiff has failed to establish that the Defendant lacked probable cause when it instituted the underlying proceedings, his claim for malicious prosecution fails as a matter of law. Parrish v. Marquis, 172 S.W.3d at 530. As such, the Court need not address the Defendant's further arguments that it did not act with malice in filing the underlying action and that the Noerr-Pennington doctrine bars the instant claim.